IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DENNIS REED WILMONT,

    Petitioner,                         No. CIV S-08-00841 LKK DAD P

    vs.

CLAUDE FINN, Warden,

    Respondent.                     FINDINGS & RECOMMENDATIONS

_____/

        Petitioner is a state prisoner proceeding pro se with a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges the decision of the California Board of Parole Hearings (hereinafter "Board") to deny him parole for one year at his third parole consideration hearing held on April 19, 2007. Upon careful consideration of the record and the applicable law, the undersigned will recommend that petitioner's application for habeas corpus relief be denied.

PROCEDURAL BACKGROUND

        Petitioner is confined pursuant to a judgment of conviction entered against him in the Los Angeles County Superior Court in 1988. In that case, a jury had found petitioner guilty of three counts of kidnap for robbery, in violation of California Penal Code § 209(b), and three counts of robbery, in violation of California Penal Code § 211. It was also determined that

1

1 petitioner was armed with and used a firearm in the commission of the crimes. (Answer, Ex. 1.)
2 On March 22, 1988, petitioner was sentenced by the trial court to a state prison term of seven
3 years to life with the possibility of parole, plus two years on the enhancement allegations. (Id.)

4 Petitioner's initial parole consideration hearing, held on September 5, 2001,
5 resulted in a three-year denial of parole by the Board. (Case No. CIV S-05-1920 LKK DAD P,
6 Memorandum of Points and Authorities attached to Pet., at 1).[1] Petitioner's next parole
7 consideration hearing was held on February 26, 2004. (Case No. CIV S-05-1920 LKK DAD P,
8 Answer, Ex. 2) On that date, a panel of the Board of Parole Hearings, then the Board of Prison
9 Terms, found petitioner not suitable for parole and denied him parole for two years. (Id.)
10 Petitioner's next parole hearing, which is placed at issue by the instant petition, was held on
11 April 19, 2007. (Answer, Ex. 2 at Ex. C (hereinafter "Decision")). The Board at that time again
12 found petitioner not suitable for parole and denied him parole for one year. (Id. at 94.)

13 Petitioner challenged the Board's April 19, 2007 decision in a petition for a writ
14 of habeas corpus filed in the Los Angeles County Superior Court. (Answer, Ex. 2.) The
15 Superior Court rejected petitioner's claims in a reasoned decision on the merits. (Id.)

16 Petitioner subsequently filed a petition for a writ of habeas corpus in the
17 California Court of Appeal for the Second Appellate District, in which he raised the same claims
18 that were contained in his habeas petition filed in the Los Angeles County Superior Court.
19 (Answer, Ex. 3.) By order dated December 20, 2007, that petition was denied with citations to In
20 re Rosenkrantz, 29 Cal. 4th 616, 667 (2002) and In re Dannenberg, 34 Cal. 4th 1061 (2005).
21 (Id.)

22 On December 31, 2007, petitioner filed a "petition for review" in the California
23 Supreme Court, raising the same claims that were set forth in his habeas petitions filed with the
24 Los Angeles County Superior Court and the California Court of Appeal. (Answer, Ex. 4.) That

---

[1] See Valerio v. Boise Cascade Corp., 80 F.R.D. 626, 635 n.1 (N.D. Cal. 1978) (judicial notice may be taken of court records), aff'd, 645 F.2d 699 (9th Cir. 1981).

2

petition for review was summarily denied by order filed March 12, 2008.  (Id.)

FACTUAL BACKGROUND

At the April 19, 2007 parole suitability hearing the Board described the facts of petitioner's offense of conviction as follows:

> On July the 2nd, the [sic] 1986, at approximately 7:30 a.m. the victim, Victor, was delivering gas to a gas station.  Wilmont's codefendant, Bell, wearing a bandana over his face and dark glasses, approached the right side of the truck.  As Victor attempted to exit the driver's door Wilmont pushed the door closed, keeping him in the cab.  Bell entered the cab through the passenger door.  Once inside, he pointed a gun at Victor and told him to 'back out and head west on 210.'  As the tanker approached Highway 2, Victor was told to get into the back sleeper of the truck and lay down.  Bell then tied Victor's hands behind his back to his belt loop, blindfolded him and stated 'lay there.'  Bell then took control of the tanker and continued west on 210 Freeway for approximately 10 to 15 minutes.  He then exited the freeway and stopped.  Wilmont had been following in another vehicle, and after unloading the gasoline, Bell drove back on to the freeway and stopped, leaving the tanker.  Victor was able to free himself and return to the tanker.  On August 2nd, 1986, at approximately 2:50 a.m., the victim, Hastings was delivering gasoline to a gas station.  Upon arrival, Hastings walked to the rear of the location to collect the payment for the gasoline.  As he walked back to the front, he passed a dumpster.  Subject number one jumped out from behind the dumpster and pointed a steel revolver at his face.  He was then ordered to drop the payment box, put his hands behind his head, and stand up against the wall.  Hastings was then ordered into the front passenger seat of the truck.  Subject number two sat in the driver's seat and told him 'don't try to get out and don't leave the truck.'  Subject number two asked Hastings when his shift was over, and he replied that he was an hour late.  Upon hearing this, subject number two stopped the truck and waited for subject number one, who was following in another vehicle.  Subject number two sold [sic] subject number one that the victim was running late on his run and they should forget about stealing the truck and trailer.  Subject number one replied, 'we've gone this far.  We're not stopping.'  Hastings was then taken out of the truck and placed in the vehicle with subject number one.  While subject number one drove the car, subject number two followed behind in the tanker truck.  The truck and the tanker trailer were later recovered.  Although his identity was not specified, subject number two's actions are consistent with Wilmont's previous agencies [sic] in other counts.

(Decision at 16-18.)

3

ANALYSIS

I. <u>Standards of Review Applicable to Habeas Corpus Claims</u>

A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of some transgression of federal law binding on the state courts. See <u>Peltier v. Wright</u>, 15 F.3d 860, 861 (9th Cir. 1993); <u>Middleton v. Cupp</u>, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing <u>Engle v. Isaac</u>, 456 U.S. 107, 119 (1982)). A federal writ is not available for alleged error in the interpretation or application of state law. See <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991); <u>Park v. California</u>, 202 F.3d 1146, 1149 (9th Cir. 2000); <u>Middleton</u>, 768 F.2d at 1085. Habeas corpus cannot be utilized to try state issues <u>de novo</u>. <u>Milton v. Wainwright</u>, 407 U.S. 371, 377 (1972).

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). See <u>Lindh v. Murphy</u>, 521 U.S. 320, 336 (1997); <u>Clark v. Murphy</u>, 331 F.3d 1062, 1067 (9th Cir. 2003). Section 2254(d) sets forth the following standards for granting habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

See also <u>Penry v. Johnson</u>, 532 U.S. 782, 792-93 (2001); <u>Williams v. Taylor</u>, 529 U.S. 362 (2000); <u>Lockhart v. Terhune</u>, 250 F.3d 1223, 1229 (9th Cir. 2001). If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing court must conduct a de novo review of a habeas petitioner's claims. <u>Delgadillo v. Woodford</u>, 527 F.3d 919, 925 (9th Cir. 2008). See also <u>Frantz v. Hazey</u>, 513 F.3d 1002, 1013 (9th Cir. 2008) (en banc) ("[I]t is now clear both that

we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised.").

The court looks to the last reasoned state court decision as the basis for the state court judgment. Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). If the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, this court may consider both decisions to ascertain the reasoning of the last decision. Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc). Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under section 2254(d). Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003); Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002). When it is clear that a state court has not reached the merits of a petitioner's claim, or has denied the claim on procedural grounds, the AEDPA's deferential standard does not apply and a federal habeas court must review the claim de novo. Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003).

II. Petitioner's Claim

Petitioner claims that the Board's failure to find him suitable for parole at his April 19, 2007, hearing violated his right to due process because the record before the Board did not contain sufficient evidence that he would pose an unreasonable risk of danger to the public if released. (Pet. at consecutive pgs. 4-7.) Petitioner emphasizes specific factors which indicate he is suitable for parole, such as his lack of a significant prison disciplinary record, psychological evaluations which opine that his risk of dangerousness if released into the community is below average, and his extensive participation in programming while in prison. (Id.)

A. State Court Decision

The Los Angeles County Superior Court provided the last reasoned state court decision with respect to petitioner's due process claim. That court reasoned as follows:

1  The Court has read and considered the Petition for Writ of Habeas Corpus filed on July 16, 2007 by the Petitioner. Having independently reviewed the record, giving deference to the broad discretion of the Board of the Board of parole Hearings ("Board") in parole matters, the Court concludes that the record contains "some evidence" to support the determination that the Petitioner presents an unreasonable risk of danger to society and is, therefore, not suitable for release on parole. See Cal. Code Reg. Tit. 15, § 2402; In re Rosenkrantz (2002) 29 Cal.4th 616, 667.

The Petitioner was received in the Department of Corrections on March 28, 1988 after convictions for two counts of kidnap for robbery with a firearm. He was sentenced to two terms of life with the possibility of parole, plus a two-year enhancement. His minimum parole eligibility date was February 11, 2002.

The record reflects that on July 2, 1986, the Petitioner and his accomplice robbed Mr. Victor, who was delivering gasoline, at gunpoint. The Petitioner's accomplice forced Mr. Victor into the back seat of his tanker and drove him to a location to empty it. He then bound and gagged Mr. Victor and left him in the tanker. The Petitioner followed in a separate car throughout the robbery. Then, on August 2, 1986, the Petitioner and his accomplice robbed Mr. Hastings, who was also attempting to deliver gasoline. They used the same method to commit the armed robbery and stole a payment box that Mr. Hastings was carrying. The Petitioner and his accomplice sold the gasoline they stole to friends for approximately $5,000.

The Board found the Petitioner unsuitable for parole after a parole consideration hearing held on April 19, 2007. The Petitioner was denied parole for one year. The Board concluded that the Petitioner was unsuitable for parole and would pose an unreasonable risk of danger to society and a threat to public safety. The Board based its decision primarily upon his commitment offenses.

The Court finds that there is some evidence to support the Board's findings that multiple victims were attacked in separate offenses; that the offenses were carried out in a dispassionate and calculated manner; and that the motive was very trivial in relation to the offenses. Cal. Code Regs, tit. 15, § 2402, subds. (c)(1)(A), (c)(1)(B) and (c)(1)(E). In their attacks on both Mr. Victor and Mr. Hastings, the Petitioner and his accomplice planned the robberies and used the Petitioner's accomplice's knowledge as a former tanker driver for that purpose. They acted in concert to commit each armed robbery in a dispassionate and calculated manner. Additionally, the Petitioner's motive of obtaining money because he was unemployed at the time is very trivial in relation to the terrorizing attacks on two victims.

/////

> The Board also considered the Petitioner's apparent lack of insight into the gravity of his offenses. The Board noted that the Petitioner minimized the harm to his victims as a result of his offenses. While this factor, alone, may not justify a finding of unsuitability, the Board may properly consider it as relevant to a determination of whether the Petitioner is suitable for parole. Cal. Code Regs, tit. 15, § 2402(b).
>
> The Board also considered the Petitioner's post-conviction gains, however, they still concluded that the Petitioner would pose an unreasonable threat to public safety. Penal Code § 3041(b). The Court finds that there is some evidence to support this determination because of the nature of his commitment offenses, as well as his continued minimization of his commitment offenses.
>
> Accordingly, the petition is denied.

(Answer, Ex. 2.)

### B. Due Process in the California Parole Context

The Due Process Clause of the Fourteenth Amendment prohibits state action that deprives a person of life, liberty, or property without due process of law. One alleging a due process violation must first demonstrate that he was deprived of a liberty or property interest protected by the Due Process Clause and then show that the procedures attendant upon the deprivation were not constitutionally sufficient. Ky. Dep't. of Corr. v. Thompson, 490 U.S. 454, 459-60 (1989); McQuillion I, 306 F.3d at 900.

A protected liberty interest may arise from either the Due Process Clause of the United States Constitution or state laws. Bd. of Pardons v. Allen, 482 U.S. 369, 373 (1987). The United States Constitution does not, of its own force, create a protected liberty interest in a parole date, even one that has been set. Jago v. Van Curen, 454 U.S. 14, 17-21 (1981). However, "a state's statutory scheme, if it uses mandatory language, 'creates a presumption that parole release will be granted' when or unless certain designated findings are made, and thereby gives rise to a constitutional liberty interest." McQuillion I, 306 F.3d at 901 (quoting Greenholtz v. Inmates of Neb. Penal, 442 U.S. 1, 12 (1979)).

/////

California's parole scheme gives rise to a cognizable liberty interest in release on parole, even for prisoners who have not already been granted a parole date. Sass v. Cal. Bd. of Prison Terms, 461 F.3d 1123, 1128 (9th Cir. 2006); Biggs v. Terhune, 334 F.3d 910, 914 (9th Cir. 2003); McQuillion I, 306 F.3d at 903; see also In re Lawrence, 44 Cal. 4th 1181, 1204, 1210, 1221 (2008). Accordingly, this court must examine whether California provided the constitutionally-required procedural safeguards when depriving petitioner of a protected liberty interest and, if not, whether the state courts' conclusion that it did was contrary to or an unreasonable application of clearly established federal law.

In this regard, it is clearly established federal law that a parole board's decision deprives a prisoner of due process with respect to his constitutionally protected liberty interest in a parole release date if the Board's decision is not supported by "some evidence in the record." Superintendent v. Hill, 472 U.S. 445, 457 (1985); Irons v. Carey, 505 F.3d 846, 851 (9th Cir. 2007); Sass, 461 F.3d at 1128; Biggs, 334 F.3d at 915. "The 'some evidence' standard is minimally stringent," and a decision will be upheld if there is any evidence in the record that could support the conclusion reached by the factfinder. Powell v. Gomez, 33 F.3d 39, 40 (9th Cir. 1994) (citing Cato v. Rushen, 824 F.2d 703, 705 (9th Cir. 1987)). See also Toussaint v. McCarthy, 801 F.2d 1080, 1105 (9th Cir. 1986). However, "the evidence underlying the board's decision must have some indicia of reliability." Jancsek v. Or. Bd. of Parole, 833 F.2d 1389, 1390 (9th Cir. 1987). See also Perveler v. Estelle, 974 F.2d 1132, 1134 (9th Cir. 1992). Determining whether the "some evidence" standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or the weighing of evidence. Toussaint, 801 F.2d at 1105. The question is whether there is any reliable evidence in the record that could support the conclusion reached. Id.

When assessing whether the Board's suitability decision was supported by "some evidence," the analysis "is framed by the statutes and regulations governing parole suitability determinations in the relevant state." Irons, 505 F.3d at 851. Therefore, this court must:

8

> look to California law to determine the findings that are necessary to deem a prisoner unsuitable for parole, and then must review the record in order to determine whether the state court decision holding that these findings were supported by "some evidence" in [petitioner's] case constituted an unreasonable application of the "some evidence" principle articulated in Hill.

(Id.)

Under California law, prisoners serving indeterminate prison sentences "may serve up to life in prison, but they become eligible for parole consideration after serving minimum terms of confinement." In re Dannenberg, 34 Cal. 4th 1061, 1078 (2005). The Board normally sets a parole release date one year prior to the inmate's minimum eligible parole release date, and does so "in a manner that will provide uniform terms for offenses of similar gravity and magnitude in respect to their threat to the public." In re Lawrence, 44 Cal. 4th at 1202 (citing California Penal Code § 3041(a)). A release date must be set "unless [the Board] determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration . . . and that a parole date, therefore, cannot be fixed . . . ." California Penal Code § 3041(b).

In order to carry out the mandate of § 3041, the Board must determine "whether the inmate poses 'an unreasonable risk of danger to society if released from prison,' and thus whether he or she is suitable for parole." In re Lawrence, 44 Cal. 4th at 1202 (citing California Code Regs., tit. 15, § 2281(a)). In doing so, the Board must consider all relevant, reliable information available regarding

> the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release.

9

Cal. Code Regs., tit. 15, § 2281(b).

The regulation identifies circumstances that tend to show suitability or unsuitability for release. California Code Regs., tit. 15, § 2281(c) & (d). The following circumstances have been identified as tending to show that a prisoner is suitable for release: (1) the prisoner has no juvenile record of assaulting others or committing crimes with a potential of personal harm to victims; (2) the prisoner has experienced reasonably stable relationships with others; (3) the prisoner has performed acts that tend to indicate the presence of remorse or has given indications that he understands the nature and magnitude of his offense; (4) the prisoner committed his crime as the result of significant stress in his life; (5) the prisoner's criminal behavior resulted from having been victimized by battered women syndrome; (6) the prisoner lacks a significant history of violent crime; (7) the prisoner's present age reduces the probability of recidivism; (8) the prisoner has made realistic plans for release or has developed marketable skills that can be put to use upon release; and (9) institutional activities indicate an enhanced ability to function within the law upon release. California Code Regs., tit. 15, § 2281(d).

The following circumstances have been identified as tending to indicate unsuitability for release: (1) the prisoner committed the offense in an especially heinous, atrocious, or cruel manner; (2) the prisoner had a previous record of violence; (3) the prisoner has an unstable social history; (4) the prisoner's crime was a sadistic sexual offense; (5) the prisoner had a lengthy history of severe mental problems related to the offense; and (6) the prisoner has engaged in serious misconduct in prison. California. Code Regs., tit. 15, § 2281(c). Factors to consider in deciding whether the prisoner's offense was committed in an especially heinous, atrocious, or cruel manner include: (A) multiple victims were attacked, injured, or killed in the same or separate incidents; (B) the offense was carried out in a dispassionate and calculated manner, such as an execution-style murder; (C) the victim was abused, defiled or mutilated during or after the offense; (D) the offense was carried out in a manner that demonstrated an exceptionally callous disregard for human suffering; and (E) the motive for the crime is

inexplicable or very trivial in relation to the offense. Id. § 2281(c)(1)(A) - (E).

The overriding concern in determining parole suitability is public safety. Dannenberg, 34 Cal. 4th at 1086. This "core determination of 'public safety' . . . involves an assessment of an inmates current dangerousness." Lawrence, 44 Cal. 4th at 1205 (emphasis in original). See also Cal. Code Regs. tit. 15, § 2281(a) ("Regardless of the length of time served, a life prisoner shall be found unsuitable for and denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison.") Accordingly, under California law,

> when a court reviews a decision of the Board or the Governor, the relevant inquiry is whether some evidence supports the decision of the Board or the Governor that the inmate constitutes a current threat to public safety, and not merely whether some evidence confirms the existence of certain factual findings.

Lawrence, 44 Cal. 4th at 1212 (citing In re Rosenkrantz, 29 Cal. 4th 616, 658 (2002); Dannenberg, 34 Cal. 4th at 1071; and In re Lee, 143 Cal. App. 4th 1400, 1408 (2006)).

In recent years the Ninth Circuit Court of Appeals has concluded that, given the liberty interest that California prisoners have in their release on parole, a continued reliance upon an unchanging factor to support a finding of unsuitability for parole may, over time, constitute a violation of due process. The court has addressed the issue in three significant cases, each of which will be discussed below.

First, in Biggs, the Ninth Circuit Court of Appeals recognized that a continued reliance on an unchanging factor to deny parole, such as the circumstances of the offense, could at some point result in a due process violation.[2] While the court in Biggs rejected several of the reasons given by the Board for finding the petitioner in that case unsuitable for parole, it upheld three: (1) petitioner's commitment offense involved the murder of a witness; (2) the murder was carried out in a manner exhibiting a callous disregard for the life and suffering of another; and (3)

---

[2] That holding has been acknowledged as representing the law of the circuit. Irons, 505 F.3d at 853; Sass, 461 F.3d at 1129.

11

petitioner could benefit from therapy. Biggs, 334 F.3d at 913. However, the court in Biggs cautioned that continued reliance solely upon the gravity of the offense of conviction and petitioner's conduct prior to committing that offense in denying parole could, at some point, violate due process. In this regard, the court observed:

> As in the present instance, the parole board's sole supportable reliance on the gravity of the offense and conduct prior to imprisonment to justify denial of parole can be initially justified as fulfilling the requirements set forth by state law. Over time, however, should Biggs continue to demonstrate exemplary behavior and evidence of rehabilitation, denying him a parole date simply because of the nature of Biggs' offense and prior conduct would raise serious questions involving his liberty interest in parole.

Id. at 916. The court in Biggs also stated that "[a] continued reliance in the future on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation." Biggs. 334 F.3d at 917.

In Sass, the Board found the petitioner unsuitable for parole at his third suitability hearing based on the gravity of his offenses of conviction in combination with his prior offenses. 461 F.3d at 1126. Citing Biggs, the petitioner in Sass contended that reliance on these unchanging factors violated due process. The court disagreed, concluding that these factors amounted to "some evidence" to support the Board's determination. Id. at 1129. The court provided the following explanation for its holding:

> While upholding an unsuitability determination based on these same factors, we previously acknowledged that "continued reliance in the future on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and *could* result in a due process violation." Biggs, 334 F.3d at 917 (emphasis added). Under AEDPA it is not our function to speculate about how future parole hearings could proceed. Cf. id. The evidence of Sass' prior offenses and the gravity of his convicted offenses constitute some evidence to support the Board's decision. Consequently, the state court decisions upholding the denials were neither contrary to, nor did they involve an unreasonable

/////

application of, clearly established Federal law as determined by the Supreme Court of the United States. 28 U.S.C. § 2254(d).

Id.

In Irons, the Ninth Circuit sought to harmonize the holdings in Biggs and Sass, stating as follows:

> Because the murder Sass committed was less callous and cruel than the one committed by Irons, and because Sass was likewise denied parole in spite of exemplary conduct in prison and evidence of rehabilitation, our decision in Sass precludes us from accepting Irons' due process argument or otherwise affirming the district court's grant of relief.
>
> We note that in all the cases in which we have held that a parole board's decision to deem a prisoner unsuitable for parole solely on the basis of his commitment offense comports with due process, the decision was made before the inmate had served the minimum number of years required by his sentence. Specifically, in Biggs, Sass, and here, the petitioners had not served the minimum number of years to which they had been sentenced at the time of the challenged parole denial by the Board. Biggs, 334 F.3d at 912; Sass, 461 F.3d at 1125. All we held in those cases and all we hold today, therefore, is that, given the particular circumstances of the offenses in these cases, due process was not violated when these prisoners were deemed unsuitable for parole prior to the expiration of their minimum terms.
>
> Furthermore, we note that in Sass and in the case before us there was substantial evidence in the record demonstrating rehabilitation. In both cases, the California Board of Prison Terms appeared to give little or no weight to this evidence in reaching its conclusion that Sass and Irons presently constituted a danger to society and thus were unsuitable for parole. We hope that the Board will come to recognize that in some cases, indefinite detention based solely on an inmate's commitment offense, regardless of the extent of his rehabilitation, will at some point violate due process, given the liberty interest in parole that flows from the relevant California statutes. Biggs, 334 F.3d at 917.

Irons, 505 F.3d at 853-54.[3]

---

[3] The California Supreme Court has also acknowledged that the aggravated nature of the commitment offense, over time, may fail to provide some evidence that the inmate remains a current threat to public safety. In re Lawrence, 44 Cal. 4th at 1218-20 & n. 20. Additionally, a recent panel of the Ninth Circuit in Hayward v. Marshall, 512 F.3d 536, 546-47 (9th Cir. 2008),

13

C. <u>Analysis</u>

In addressing the factors it considered in reaching its 2006 decision that petitioner was unsuitable for parole, the Board in this case stated as follows:

> PRESIDING COMMISSIONER DAVIS: Let the record reflect that all those previously identified as being in the room have returned. This is in the matter of Dennis Wilmont, CDC No. D-81305. The panel reviewed all information received from the public and relied on the following circumstances in concluding the prisoner is not suitable for parole and would pose an unreasonable risk of danger to society or threat to public safety if released from prison. We have come to this conclusion first by the commitment offense itself. The offense was carried out in an especially cruel manner. There were multiple victims involved in separate instances. The offense was carried out in a calculated manner, and the motive for the crime was very trivial in relation to the offense. These conclusions are drawn from the statement of facts wherein the prisoner himself reports that he committed the crimes because he was unemployed and needed money. Further in court he identified gambling debt as another possible motive. The crimes involved convincing the victims that their lives were in danger if they did not comply with the directions of Mr. Wilmont and his Partner. The crimes involved some sophistication in their planning and execution. With regard to a prior record, we find that the criminal conduct is limited to one conviction for indecent exposure and a failure to profit from society's attempts to correct criminality, specifically, adult probation. With regard to institutional behavior, we find that there are six 128(a) counseling chronos, the last of which was in August of 1997. The panel discerned no particular pattern for the 128(a) counseling chronos. And three serious 115 disciplinary reports, the last of which were – was in May of 1992. With regard to the psychological report of November 2005 by Dr. Rekart and the addendum of December 2006 by Dr. Mann, the panel finds that the report is largely supportive. With regard to parole plans, the parole plans seem supportive but could be bolstered by doing some additional research into Social Security benefits for some long-term planning. With regard to the 3042 notices, we note that the District Attorney from Los Angeles County was here in person by representative and does oppose parole. Under other issues bearing on suitability, what is most disconcerting to the panel is after all this time and after all the

---

determined that under the "unusual circumstances" of that case the unchanging factor of the gravity of the petitioner's commitment offense did not constitute "some evidence" supporting the governor's decision to reverse a parole grant on the basis that the petitioner would pose a continuing danger to society. However, on May 16, 2008, the Court of Appeals decided to rehear that case en banc. <u>Hayward v. Marshall</u>, 527 F.3d 797 (9th Cir. 2008). Therefore, the panel decision in <u>Hayward</u> is no longer citable precedent.

14

1   programming that he has done, he has – still does not grasp the
long-term ramifications of his actions.  At this age of 61 and as he
2   self-reports having been the victim himself, one would think that
he would have significant insight and understanding of such that he
3   has the tools to deal with reversals in the future without resorting
to crime.  Nevertheless, we do want to commend you for the
4   following, and Commissioner Weaver will detail those.

5   DEPUTY COMMISSIONER WEAVER:  Yes.  The panel
commends you for pursuing your religions studies and accruing the
6   294 hours that were required in excess of the hours that were
required to get into the program that you submitted as part of your
7   parole plan.  Also commend you for checking out more than one
resource in terms of a place for you to parole to, and that's very
8   good.  And also we commend you for your work record, which is
[sic] been exemplary.

9
PRESIDING COMMISSIONER DAVIS:  However, these positive
10   aspects of behavior do not outweigh the factors for unsuitability.
This is a one-year denial.  The panel recommendations [sic] that
11   you have no more 115s or 128(a)s, that as available that you
continue to participate in self-help, that you cooperate with
12   clinicians during the next clinical evaluation and that the panel is
requesting a new psychological evaluation be conducted under the
13   current format.  The panel would offer to you the opportunity to do
independent reading if you choose such that you could come back
14   to the panel with two or three paragraphs indicating an
understanding of what you have read, how it's given you additional
15   insight or understanding into the perhaps again the long-term
ramifications of your actions.  Anything really that applies to you.
16   I've even seen people do book reports on books of the Bible.  Since
you have an interest in that area.  And then talking about how it
17   applies to you.  Not just what it says, but how it applies to you, that
you do some – as we said earlier – some investigation into your
18   Social Security benefits, and I would encourage you to sit down
with your closing statement and take a look at that in comparison
19   to some of the statements that you – some of the conversation, the
back and forth responses with regard to your own insight and so
20   forth, and compare the two, and see if you don't see a difference
and see if there isn't something within that closing statement that
21   you can, and as again [sic] compare to your other statements that
you made, that you can draw some life lessons from that that (sic)
22   will show future panels perhaps again a greater understanding.

23  (Decision at 90-93.)

24          After taking into consideration the Ninth Circuit decisions in Biggs, Sass, and

25  Irons, and for the reasons set forth below, this court concludes that petitioner is not entitled to

26  federal habeas relief with respect to his due process challenge to the Board's April 19, 2007

15

decision denying him parole. The Board's decision that petitioner was unsuitable for parole and that his release would unreasonably endanger public safety was supported by "some evidence" that bore "indicia of reliability," and meets the minimally stringent test set forth in Biggs, Sass, and Irons. The Board relied not only on the unchanging circumstances of petitioner's offense of conviction but also his prison disciplinary record[4] and his failure to recognize the magnitude of his crime. These factors in combination constitute "some evidence" supporting the Board's decision that petitioner was not yet suitable for release on parole. Sass, 469 F.3d at 1129; Irons, 505 F.3d at 665. This is the case, even though there are certainly several circumstances reflected in the record specific to petitioner tending to show that he is suitable for release on parole.

        A continued reliance on these same factors may at some point pose a serious constitutional concern and require greater scrutiny of the reasons given for denying petitioner parole. However, this case has not yet reached the point where a continued reliance on an unchanging factor such as the circumstances of the offense in denying parole has resulted in a due process violation. Accordingly, petitioner is not entitled to relief on his claim that the Board's failure to find him suitable for parole at his April 19, 2007 parole suitability hearing violated his right to due process. Sass, 461 F.3d at 1129; Irons, 505 F.3d at 664-65.[5]

/////

/////

---

[4] The court notes that petitioner's disciplinary record, especially with respect to serious charges, was already dated by the time of his 2007 parole hearing. Nonetheless, this was a factor cited by the Board in reaching its decision.

[5] In both his petition and traverse, petitioner contends that the Board failed to comply with state laws and regulations when it found him unsuitable for parole at the April 19, 2007 hearing. Petitioner's arguments that the state court has erred in applying state law are not cognizable in this federal habeas corpus proceeding. See Rivera v. Illinois, ___ U.S. ___, 129 S. Ct. 1446, 1454 (2009) ("[A] mere error of state law . . . is not a denial of due process") (quoting Engle v. Isaac, 456 U.S. 107, 121, n. 21 (1982) and Estelle v. McGuire, 502 U.S. 62, 67, 72-73 (1991)). A habeas court may not grant the writ on the basis of errors of state law where, as here, the combined effect of those errors does not violate the Federal Constitution. Lewis v. Jeffers, 497 U.S. 764, 780 (1990); Pulley v. Harris, 465 U.S. 37, 41 (1984); Parle v. Runnels 387 F.3d 1030, 1045 (9th Cir. 2004).

III. Request for Evidentiary Hearing

Petitioner also requests that the court conduct an evidentiary hearing on his due process claim. Pursuant to 28 U.S.C. § 2254(e)(2), an evidentiary hearing is appropriate only under the following circumstances:

> (e)(2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that-
>
> (A) the claim relies on-
>
> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>
> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact finder would have found the applicant guilty of the underlying offense[.]

Under this statutory scheme, a district court presented with a request for an evidentiary hearing must first determine whether a factual basis exists in the record to support a petitioner's claims and, if not, whether an evidentiary hearing "might be appropriate." Baja v. Ducharme, 187 F.3d 1075, 1078 (9th Cir. 1999). See also Earp v. Ornoski, 431 F.3d 1158, 1166 (9th Cir. 2005); Insyxiengmay v. Morgan, 403 F.3d 657, 669-70 (9th Cir. 2005). A petitioner requesting an evidentiary hearing must also demonstrate that he has presented a "colorable claim for relief." Earp, 431 F.3d at 1167 (citing Insyxiengmay, 403 F.3d at 670, Stankewitz v. Woodford, 365 F.3d 706, 708 (9th Cir. 2004) and Phillips v. Woodford, 267 F.3d 966, 973 (9th Cir. 2001)). To show that a claim is "colorable," a petitioner is "required to allege specific facts which, if true, would entitle him to relief." Ortiz v. Stewart, 149 F.3d 923, 934 (9th Cir. 1998) (internal quotation marks and citation omitted).

The court concludes that no additional factual supplementation is necessary in this case and that an evidentiary hearing is not appropriate with respect to petitioner's due process

claim raised in the instant petition.  The facts alleged in support of petitioner's claim, even if established at a hearing, would not entitle him to federal habeas relief for the reasons set forth above.  Therefore, petitioner's request for an evidentiary hearing should be denied.

## CONCLUSION

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within seven days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: March 10, 2010.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:8:
wilmont841.hc